UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| In re:<br><br>DONALD LOUIS HYMES and<br>RITA MARINA HYMES,<br><br>    Debtors. | Case No. A12-00599-GS<br>Chapter 7 |

## MEMORANDUM ON MOTION TO LIFT AUTOMATIC STAY

Creditor United States of America (United States) seeks an order terminating the automatic stay as it relates to debtors Donald and Rita Hymes' residence, located at 2340 Ravenwood Avenue, Fairbanks, Alaska 99709 (the "Property"). The United States' *Motion to Lift Automatic Stay* ("*Motion*") requests relief from the stay to proceed with a public foreclosure sale of the Property as part of its effort to collect outstanding tax debts. The *Motion* came before the court for final hearing on December 7, 2012. Adam R. Smart appeared telephonically on behalf of the United States. Debtors Rita M. Hymes and Donald L. Hymes appeared telephonically. Trustee Larry Compton also attended. The United States called Steven Hopkins, as well as Mr. and Mrs. Hymes, as witnesses. The debtors also called Ralph K. Winterowd as a witness. As a preliminary matter, the Court has jurisdiction over the *Motion* pursuant to 28 U.S.C. §1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(G). This memorandum constitutes the court's findings of fact and conclusions of law.

**FACTS**

The United States has spent over two decades attempting to collect federal taxes reaching back to 1989 from the Hymes. In 1990, the Hymes filed their first bankruptcy in Alaska.[1] The bankruptcy court dismissed that case with prejudice based upon a "multitude of defects with the Hymes' pleading and plan," that included the fraudulent transfer of their home and use of "a misleading account to avoid levy by the I.R.S. in violation of 11 U.S.C. § 544 and Alaska law regarding fraudulent conveyances."[2]

In 2005, the United States sued the Hymes to establish their tax liability from 1989 forward, and to foreclose federal tax liens against the Property.[3] The United States sued not only the Hymes, but their daughters, as well as two trusts that purportedly held interests in the Property through various transfers.[4] The United States moved for summary judgment as to "(1) whether defendants Donald L. Hymes and Rita M. Hymes are indebted to the United States for unpaid assessed tax, penalties, and interest, plus additional unassessed penalties and interest as provided by law, and (2) whether the United States is entitled to foreclose its federal tax liens upon the real property of defendants Donald L. Hymes and Rita M.

---

[1] *In re Hymes*, Case No. F90-00607 (Bankr. D. Alaska).

[2] *In re Hymes*, 1 A.B.R. 356, 357 (Bankr. D. Alaska 1991).

[3] United States' Ex. 4 at 11 [*United States' Mot. for Summ. J.*, filed Sept. 14, 2007, in *United States v. Hymes*, Case No. 3:05-cv-00123 (D. Alaska)].

[4] *Id.* at 4-5. *See also* United States Ex. 24 (Quit-Claim Deed dated Feb. 23, 1988), Ex. 25 (Statutory Quitclaim Deed dated Jan. 2, 1993); and Ex. 26 (Quit-Claim Deed dated May 10, 1999). The Hymes' daughters represented that they had no interest in the Property and were dismissed from the action.

2

Hymes."[5]  The district court granted summary judgment, finding that the motion was "virtually unopposed."[6]

The Hymes twice moved for reconsideration, and filed a motion to dismiss the case despite the grant of summary judgment.[7]  The district court entered its *Supplemental Order Regarding Summary Judgment and Order Denying/Dismissing Defendants' Subsequent Pleadings("Supplemental Order)*, in which it denied reconsideration, as well as the motion to dismiss.  The *Supplemental Order* also reaffirmed the grant of summary judgment:

> By way of this Supplemental Order, the Court notes that the uncontested evidence in this matter is clear.  Donald L. Hymes and Rita M. Hymes are indebted to the United States for tax, interest, and penalties assessed for each of the tax years at issue, plus additional interest and penalties as provided by law. Further, the United States has valid tax liens and is entitled to foreclose against the subject property.  The United States is therefore entitled to judgment as a matter of law reducing the assessments for those years to judgment and foreclosing the federal tax liens against the subject property.  Defendants have produced no evidence or coherent arguments to suggest otherwise.[8]

Three days after entering its *Supplemental Order*, the district court entered its *Judgment in a Civil Case (Judgment)* holding that Donald Hymes owed $234,320.79, and Rita Hymes owed $28,580.29, plus interest, and penalties from September 14, 2007, to the

---

[5] United States' Ex. 4 at 2 [*United States' Mot. for Summ. J.*, filed Sept. 14, 2007, in *United States v. Hymes*, Case No. 3:05-cv-00123 (D. Alaska)].

[6] United States' Ex. 2 at 2 [*Order Regarding Pending Mots.*, entered Jan. 16, 2008, in *United States v. Hymes*].

[7] United States' Ex. 3 at 1 [*Supplemental Order Regarding Summ. J. and Order Denying/Dismissing Defs.' Subsequent Pleadings*, entered Feb. 29, 2008, in *United States v. Hymes*.

[8] *Id*. at 2.

3

United States for unpaid federal tax liability.[9] Two days later, on March 5, 2008, the district court entered its *Order of Foreclosure and Judicial Sale (Foreclosure Order)*, again detailing the Hymes' tax liability, recognizing their sole ownership of the Property, and finding that the United States "has valid and subsisting tax liens on all property and rights to property of Donald L. Hymes and Rita M. Hymes, including the [Property], arising from the above described tax assessment, which liens are effective as of the dates of the assessment."[10] That order foreclosed the tax liens and specifically authorized the sale of the Property. To facilitate that sale, the *Foreclosure Order* provided: "Donald L. Hymes and Rita M. Hymes, and any and all other persons occupying the subject property, shall permanently leave and vacate such property within (30) days of entry of this Order of Foreclosure and Judicial Sale."[11] The order also directed that the Hymes "shall not record any instruments, publish any notice, or take any other action that may directly or indirectly tend to adversely affect the value of the subject property or that may tend to deter or discourage potential bidders from participating in the public sale."[12]

The Hymes appealed the judgment to the Ninth Circuit. On October 8, 2009, the Ninth Circuit affirmed the judgment, finding that "[t]he district court properly granted summary judgment to the United States because the Hymes failed to controvert Certificates of Assessments and Payments demonstrating that the assessments were properly made."[13]

---

[9] United States' Ex. 1 [*Judgment in a Civil Case*, entered March 3, 2008, in *United States v. Hymes*].

[10] United States' Ex. 5 at 2 [*Order of Foreclosure and Judicial Sale*, entered Mar. 5, 2008, in *United States v. Hymes*].

[11] *Id.* at 7, ¶ 12.

[12] *Id.* at 6-7.

[13] United States's Ex. 6 at 2 [*Mem.*, filed Oct. 8, 2009, in *United States v. Hymes,* Case No. 08-35495 (9th Cir. 2009)].

4

The United States evicted the Hymes from the Property sometime in 2008, after entry of the *Foreclosure Order*. The foreclosure sale was scheduled and noticed for December 12, 2008.[14] Testimony at the hearing revealed that the Hymes filed a lis pendens against the property and published that fact in the paper prior to the foreclosure sale.[15] These actions violated the *Foreclosure Order's* express prohibition against such conduct.

The day before the scheduled foreclosure sale the Hymes filed a chapter 7 petition ("Hymes I").[16] The Hymes had difficulty recalling this bankruptcy during their testimony at the final hearing. Mrs. Hymes did, however, testify that the bankruptcy was filed to protect their property interests. Several months after the petition was filed, on the Hymes' motion, the bankruptcy court converted their case to chapter 13.[17] The bankruptcy court dismissed the chapter 13 proceeding on May 13, 2009, after the Hymes failed to file a plan.[18] The Hymes moved for reconsideration of the dismissal, arguing that it was improper to dismiss the bankruptcy until the United States filed its proof of claim in the bankruptcy.[19]

---

[14] United States' *Mem. in Supp. of Mot. to Lift Automatic Stay* (Docket No. 15) at 3-4.

[15] *See also* United States' Ex. 31 ("*Beware of IRS Sale*" notice published by the Hymes in the Fairbanks Daily News-Miner on Nov. 20, 2008.) The notice was published on the same page as the United States' "*Notice of Real Estate Auction*," which pertained to the public sale scheduled for December 12, 2008. Both the Hymes' and the United States' notices were scheduled to be published on Nov. 27 and Dec. 4, 2008, as well. *Id.*

[16] *In re Hymes,* Case No. 08-00812 (Bankr. D. Alaska) ("*Hymes I*")*,* Docket No. 1. As discussed above, the Hymes actually filed their first bankruptcy in 1990. However, the United States relies only upon the 2008 and 2012 bankruptcies as affecting its efforts to foreclose its tax liens against the Property. For this reason, the court will refer to the 2008 bankruptcy filing as *Hymes I* and the 2012 bankruptcy as *Hymes II*.

[17] *Hymes I, Order Converting Case under Ch. 7 to a Case Under Ch. 13*, entered Mar. 24, 2009 (Docket No. 29).

[18] *Hymes I, Order Granting Mot. to Dismiss and Denying Mot. for Stay*, entered May 13, 2009 (Docket No. 63).

[19] *Hymes I, Mot. to Reconsider Order at Docket # 63*, filed May 26, 2009 (Docket No. 65).

5

The bankruptcy court denied reconsideration.[20] The Hymes appealed the denial of reconsideration to the district court.[21] On March 24, 2010, the district court affirmed the denial of reconsideration.[22]

Sometime prior to the district court's decision, the Hymes moved back into the Property.[23] After the district court affirmed the dismissal of the bankruptcy, the United States was again forced to evict the Hymes from the Property before commencing the public sale. According to Mrs. Hymes, this occurred on August 29, 2012. The United States published notice in the Fairbanks Daily News-Miner that it would sell the Property at public sale on October 11, 2012.[24] The Hymes once again placed competing notices in the paper disclosing that they had filed a notice of lis pendens against the property.[25] As before, this conduct was in violation of the district court's *Foreclosure Order*.

On October 5, 2012, six days before the scheduled sale of the Property, the Hymes filed their chapter 7 petition ("*Hymes II*").[26] The debtors' schedules, filed *pro se*, value the

---

[20] *Hymes I, Order Den. Mot. for Reconsideration*, entered May 27, 2009 (Docket No. 66).

[21] *Hymes I, Notice of Appeal to BAP Court* (Docket No. 67). The appeal was transferred to the United States District Court upon the filing of a *Notice of Election* by the United States.

[22] *Judgment in a Civil Case*, entered in *Hymes v. United States*, Case No. 4:09-cv-00037 (D. Alaska), at Docket No. 21.

[23] The Hymes indicate that they moved back to the Property on March 3, 2010. Both parties agree that the Hymes re-occupied the Property; the exact date on which this occurred is immaterial to this matter.

[24] United States Ex. 29. The *Notice of Public Auction Sale* was published on Sept. 8, 15, 22 and 29, 2012. *Id.*

[25] United States Ex. 30. The Hymes' "*Beware of IRS Sale*" notice was published on the same dates as the United States' *Notice of Public Auction Sale. Id.*

[26] *In re Hymes,* Case No. 12-00599 (Bankr. D. Alaska)("*Hymes II*"), *Voluntary Petition,* Docket No. 1.

6

Property at $189,500.[27] Their Schedule D lists a secured claim in the amount of $275,000 in the name of "IRS - Adam Smart."[28] Schedule D also indicates that the IRS claim is still in litigation.[29] Shortly after the petition was filed, the United States filed its *Motion to Lift Automatic Stay*.[30] The United States asserts that relief from the stay is appropriate under 11 U.S.C. § 362(d)(4) because the Hymes have engaged in a scheme to hinder and delay the foreclosure sale of the Property through their 2008 and 2012 bankruptcy filings. Alternatively, the United States contends that relief from stay is warranted under § 362(d)(2) based on the lack of equity in the Property.

## ANALYSIS

As an initial matter, the Hymes have contested relief from stay on the basis that the United States has failed to file a proof of claim. They also continue to assert that their tax liability remains subject to some undefined, yet on-going, litigation. Neither contention is a basis for precluding relief from stay. Section 362(d) is broadly written to afford relief from the automatic stay upon the "request of a party in interest."[31] The United States is clearly a party in interest, with respect to the Property, by virtue of the district court's *Judgment* and *Foreclosure Order*. The Hymes' dissatisfaction with the outcome of the district court action does not mean that the tax claim is still subject to ongoing litigation. The tax claim for those

---

[27] *Hymes II*, *Schedule A*, Docket No. 3 at 3.

[28] *Hymes II*, *Schedule D*, Docket No. 3 at 8. Mr. Smart is counsel for the United States in this proceeding.

[29] *Id*.

[30] Docket No. 14.

[31] 11 U.S.C. § 362(d).

7

years covered by the *Judgment* has been conclusively determined at this point. It was reduced to a judgment and that judgment was affirmed on appeal. Under the doctrine of *res judicata*, the Hymes' tax liability is not subject to collateral attack in this bankruptcy proceeding, and will not be relitigated here in the relief from stay context.[32]

Further, stay litigation is limited in scope and hearings on relief from stay are generally handled in a summary fashion.[33] The validity of the underlying claim is not litigated in the relief from stay context.[34] Nor is it necessary for a creditor to file a proof of claim as a precondition to obtaining stay relief. Filing a claim in a chapter 7 case serves a different purpose: to permit a creditor with an "allowed claim" to share in a distribution from the bankruptcy estate.[35] In a "no asset" chapter 7 case, such as the Hymes', no distribution is made and *none* of the creditors are required to file proofs of claim.[36]

The Hymes also claim that the United States has somehow abandoned its claim, so that it should now be precluded from enforcing it. This contention is meritless. Although the United States' claim encompasses tax assessments going as far back as 1989, it is still viable.[37] The United States' efforts to enforce its tax lien by foreclosing on the Property have

---

[32] *CIR v. Sunnen*, 333 U.S. 591, 598 (1948)("Thus if a claim of liability or non-liability relating to a particular tax year is litigated, a judgment on the merits is res judicata as to any subsequent proceeding involving the same claim and the same tax year.")

[33] *Johnson v. Righetti (In re Johnson)*, 756 F.2d 738, 740 (9th Cir. 1985).

[34] *First Fed'l Bank of Calif. v. Robbins (In re Robbins)*. 310 B.R. 626, 631 (B.A.P. 9th Cir. 2004).

[35] *See* 11 U.S.C. § 726(a); Fed. R. Bankr. P. 3002(a). A secured creditor may forego the claims process altogether and simply look to its collateral for satisfaction of its claim.

[36] Larry Compton, the chapter 7 trustee, filed a *Report of No Distribution* in *Hymes II* on Dec. 4, 2012. The *Notice of Ch. 7 Bankruptcy Case, Meeting of Creditors, & Deadlines* (Docket No. 9), advised creditors *not* to file a proof of claim in this case.

[37] *See* 26 U.S.C. § 6502(a). The United States filed suit in district court within 10 years after the assessment of the Hymes' taxes, and have reduced the tax liability to judgment.

8

been thwarted by the Hymes' actions, which include twice filing bankruptcy on the eve of scheduled foreclosure sales, and re-entering the Property after having been evicted. There is nothing in the record to support the Hymes' abandonment claim.

The United States seeks relief from the stay pursuant to 11 U.S.C. §§ 362(d)(2) and (d)(4). The United States must make a prima facie case for relief under both sections, and bears the ultimate burden of proof on the Hymes' lack of equity in the Property.[38] On all other issues, the Hymes bear the ultimate burden of proof.[39]

Relief is appropriate under § 362(d)(2) if there is no equity in the property and it is not necessary for the debtors' reorganization.[40] Here, because the Hymes have filed a chapter 7 petition, the Property is not necessary for reorganization and the only issue to be determined is whether there is equity in the Property. Equity exists if the value of the collateral exceeds the total combined debt secured by that collateral.[41] The debtors' schedules value the Property at $189,500 and list the United States' combined individual secured claims against the Property at $275,000.[42] Neither party contests the valuation of the

---

[38] 11 U.S.C. § 362(g)(1). The court in *In re First Yorkshire Holdings, Inc., v. Pacifica I, 22, LLC (In re First Yorkshire Holdings, Inc.)*, 470 B.R. 864, 870 n.6 (B.A.P. 9th Cir. 2012) noted some confusion regarding the burden of proof where the creditor seeks relief from stay under § 362(d)(4). Section 362(g) places the burden of proof on the debtor for all issues other than equity, which presumably would include the those required under § 362(d)(4). 11 U.S.C. § 362(g). Nonetheless, the Bankruptcy Appellate Panel found that "such a result is nonsensical." *Id.* (quoting *In re Abdul Muhaimin*, 343 B.R. 159, 169 (Bankr. D. Md. 2006). Neither party has raised the issue. The United States has effectively proceeded as if it had the burden of proof under § 362(d)(4). Whether one calls such burden an initial burden to establish a prima facie case or the ultimate burden of proof, the result remains the same in this case.

[39] 11 U.S.C. § 362(g)(2).

[40] 11 U.S.C. § 362(d)(2).

[41] *Stewart v. Gurley,* 745 F.2d 1194, 1196 (9th Cir. 1984)("The language of the statute simply refers to the debtor's "equity," which has been defined as "the amount or value of a property above the *total* liens or charges.").

[42] *Hymes II*, *Schedule D*, Docket No. 3 at 8.

9

residence. The principal amount of the *Judgment* entered by the district court in 2008 is $262,901.08, and the Hymes have never made a payment on that judgment. The *Judgment*, which represents the United States' secured claim, exceeds the value of the Property, even without calculation of the interest and penalties that have accrued since 2008. Clearly, there is no equity in the Property, and the United States is entitled to relief from stay under § 362(d)(2).

While relief from stay is appropriate under § 362(d)(2), the United States also seeks relief from stay under 11 U.S.C. § 362(d)(4). This is because § 362(d)(4) provides a creditor *in rem* relief from the automatic stay. Where applicable, the creditor may record the order granting relief from stay, and if properly recorded, the stay remains terminated as to that real property in *any* bankruptcy case filed within two years from the entry of the order.[43] Under § 362(d)(4), a creditor whose claim is secured by real property may obtain relief from stay as to such property in instances where the debtor's bankruptcy petition is found to be part of a scheme to delay, hinder, or defraud creditors by the filing of multiple bankruptcies.[44] The stated purpose of § 362(d)(4) is to "reduce abusive filings."[45]

---

[43] 11 U.S.C. § 362(d)(4).

[44] Section 362(d)(4) was added to the Bankruptcy Code as part of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8, 119 Stat. 23 (April 20, 2005). It also permits relief from stay as to real property if the court finds that the debtor has engaged in a scheme to delay, hinder or defraud creditors by transferring the real property without the secured creditor's consent or court approval. 11 U.S.C. § 362(d)(4)(A). Subsection (d)(4)(A) will not be discussed herein because it is not applicable to the Hymes' situation.

[45] *In re Tejal Inv., LLC*, 2012 WL 6186159 at *4 (Bankr. D. Utah Dec. 12, 2012) (quoting H.R. Rep. No. 109-31(I) at 70 (2005)).

10

To obtain relief under § 362(d)(4), the United States must be "a creditor whose claim is secured by an interest in such real property."[46] It satisfies this threshold by virtue of the district court's *Foreclosure Order* and *Judgment*, which authorized foreclosure of the Property to pay the United States' tax liens. The United States must also prove: (1) that the Hymes' petition was filed as a part of a scheme to delay, hinder, or defraud creditors; and (2) their scheme involved multiple bankruptcy filings affecting the real property.[47] The second element is easily met here, because the Property was prominently involved in both the 2008 bankruptcy, and now in the instant case. Both *Hymes I* and *Hymes II* were filed just before the United States' scheduled foreclosure sales. Further, Mrs. Hymes testified that the bankruptcy filings were made to protect their interest in the Property. The question is whether the Hymes filed this bankruptcy as part of a scheme to delay, hinder, or defraud the United States.

The Bankruptcy Code does not define the term "scheme." Drawing from Black's Law Dictionary, the bankruptcy court in *In re Duncan & Forbes Development, Inc.*, defined the term as "an artful plot or plan."[48] Given the context of § 362(d)(4), however, the court also found it necessary to define the term to account "for the nefarious purposes specified in the statute: to delay, hinder [or] defraud creditors through multiple bankruptcy filings or an

---

[46] *Id.*

[47] 11 U.S.C. § 362(d)(4)(B). As originally created in BAPCPA, § 362(d)(4) required that the scheme be designed to hinder, delay *and* defraud the creditor. As part of the Bankruptcy Technical Corrections Act of 2010 ("BTCA"), Pub. L. No. 111–327, 124 Stat. 3557 (Dec. 22, 2010), Congress amended the statute to state the test in the disjunctive, and require that the creditor prove only that the scheme was one to "hinder, delay, *or* defraud" a creditor.

[48] *In re Duncan & Forbes Dev., Inc.,* 368 B.R. 27, 32 (Bankr. C.D. Cal. 2006).

11

improper transfer of property."[49] For this reason, the court observed that a scheme, within the meaning of § 362(d)(4), is "an *intentional* artful plot or plan to delay, hinder or defraud creditors."[50]

The *Duncan and Forbes* court also noted that every bankruptcy filing hinders or delays creditors. To make the conduct actionable under § 364(d)(4), however, the scheme to hinder or delay "must be devised and contrived of malice, fraud, covin, collusion, or guile."[51] Proof of such intent, however, is rarely based upon direct evidence. As in fraudulent conveyance cases, courts typically rely upon circumstantial evidence to establish a debtor's intent to delay, hinder or defraud creditors. Courts have identified the following circumstances as probative of a scheme to hinder, delay or defraud creditors: (1) the strategic filing of a bankruptcy petition to prevent collection, (2) multiple petitions by multiple parties to protect common property, (3) lack of evidence of changed circumstances between bankruptcy filings, and (4) inability to fund a plan.[52]

The strategic nature of the debtor's bankruptcy filings is apparent from the timing of the Hymes' bankruptcy cases. Courts have consistently recognized that repeated bankruptcy filings made on the eve of successive foreclosure attempts constitute strong evidence of an

---

[49] *Id.* At the time *Duncan & Forbes* was decided, § 362(d)(4) required that the movant prove that the scheme was one to "hinder, delay, *and* defraud" a creditor.

[50] *Id.* at 32 (emphasis added); *see also In re Turnkey Dev. LLC*, 2012 WL 768160 (Bankr. D. Ariz. Mar. 7, 2012); *In re Macaulay,* 2012 WL 291915 at *3 (Bankr. D. S.C. Jul. 16, 2012); *In re Briggs,* 2012 WL 3780542 at *5 (Bankr. N.D. Ill. Aug. 31, 2012); *In re Smith*, 395 B.R. 711, 719 (Bankr. D. Kan. 2008).

[51] *Duncan & Forbes,* 368 B.R. at 34 (*citing In re Braus*, 248 F. 55, 64 (2d Cir. 1917)).

[52] *Macaulay,* 2012 WL 2919154 at *3; *Briggs,* 2012 WL 3780542 at *5; *see also In re Lee*, 467 B.R. 906, 921 (B.A.P. 6th Cir. 2012) (scheme existed based upon strategic filing of bankruptcy to avoid foreclosure, no change of circumstances from prior bankruptcy, and inability to fund a plan); *Tejal Inv.,* 2012 WL 6186159 at *6 (strategic timing of bankruptcy filings and lack of changed circumstances supported finding of scheme under § 362(d)(4));.

12

intent to delay and hinder secured creditors from collection.[53] Despite being filed four years apart, both the Hymes' 2008 and 2012 bankruptcy cases were precipitated by the United States' scheduled foreclosure sales of the Property. *Hymes I* was filed the day before the scheduled sale, and *Hymes II* was filed six days prior to a scheduled sale.[54] Both Mr. and Mrs. Hymes were evasive in their testimony about the intent and purpose of their most recent bankruptcy filing. Neither offered a reason apart from stopping the imminent foreclosure, and Mrs. Hymes ultimately conceded that the bankruptcies were filed to protect their assets. The only asset needing protection is the Property. The timing and circumstances strongly support a finding that the Hymes' bankruptcies were filed as part of a scheme to hinder and delay the United States' foreclosure sale of the Property.[55]

A debtor may overcome such a finding in instances where his or her financial circumstances have changed between the filings, particularly where such changes allow the

---

[53] *In re Abdul Muhaimin*, 343 B.R. 159, 170 (Bankr. D. Md. 2006); ("The repeated nature of the various filings by Debtor, each filed just prior to a foreclosure sale scheduled by the secured creditor or after foreclosure proceedings were initiated by the secured creditor, constitutes a scheme by each debtor, and her spouse in the Muhaimin and Brown cases, to hinder creditors."); *Macaulay*, 2012 WL 2919154 at *1; *In re Blair,* 2009 WL 5203738 at *4 (Bankr. E.D.N.Y. Dec, 21, 2009) ("the mere timing and filing of several bankruptcy cases is an adequate basis from which a court can draw a permissible inference that the filing of a subsequent case was part of a scheme to hinder, delay, and defraud creditors.")

[54] Other cases discussing the timing between bankruptcy filings and foreclosure sales include *Lee,* 476 B.R. at 921; *Tejal Inv.,* 2012 WL 6186159 at *6; *In re Montalvo*, 416 B.R. 381, 387 (Bankr. E.D.N.Y. 2009); *In re Smith*, 395 B.R. 711, 719 (Bankr. D. Kan. 2008); *In re Henderson*, 395 B.R. 893, 902 (Bankr. D. S.C. 2008); *Matter of McKanders*, 42 B.R. 108, 109 (Bankr. N.D. Ga. 1984).

[55] Other courts have granted § 362(d)(4) relief in instances where the debtor has filed two successive bankruptcy cases affecting a secured creditor's real property. *See Tejal Inv.,* 2012 WL 6186159 at *6 (debtor filed first bankruptcy day before bank's action to appoint receiver, and second bankruptcy "days before a scheduled foreclosure sale."); *In re GEL, LLC,* 2012 WL 3073069 (Bankr. E.D.N.Y. Jul. 30, 2012). Here, the Hymes' 1990 bankruptcy filing could also be considered part of an ongoing scheme to hinder and delay the United States' collection efforts. As noted above, the Hymes' 1990 case was dismissed because of a "multitude of defects," including the fraudulent transfer of the Property.

13

debtor to fund a plan to repay the affected creditor.[56] That is not the case here. The Hymes have filed a chapter 7 petition, foregoing any attempt at reorganization. Presumably, this choice was dictated by their constrained financial circumstances. Excluding any payment to the United States, the Hymes' Schedules I and J reflect a monthly deficit of $394.60 based upon $2,534.60 in monthly income and $2,929.00 in monthly expenses.[57] They do not have the ability to make payments to United States in any reorganization.

Equally clear, the Hymes have no inclination to make payments to the United States on their tax debt. In this regard, nothing has changed since the bankruptcy court dismissed *Hymes I* for failure to propose a chapter 13 plan. The current bankruptcy is but one more chapter in the Hymes' longstanding tax dispute with the United States that began with their fraudulent transfer of the Property and omission of the tax debt in their 1990 bankruptcy filing. Instead of having changed, the circumstances remain almost identical to those in 2008 when the debtors filed *Hymes I*. Rather than make any payments the Hymes seek again to attack the *Judgment* in this bankruptcy case, just as they did in *Hymes I*. Despite the district court's *Foreclosure Order* directing them to permanently leave and vacate the Property, the Hymes re-occupied the Property requiring a second eviction. When the United States published its notice of the public sale scheduled for October 11, 2012, the Hymes again published a competing notice to discourage potential purchases, also expressly prohibited by the district court's *Foreclosure Order*. And, as already discussed, they filed this bankruptcy on the eve of the public sale, just as they had done in 2008. The evidence overwhelmingly

---

[56] *Lee,* 476 B.R. at 921(lack of changed circumstances supported finding of scheme to hinder and delay); *Macaulay,* 2012 WL 2919154 at *3; *GEL, LLC,* 2012 WL 3073069 at *8 (failure to develop chapter 13 case is evidence of scheme to hinder and delay)

[57] *Hymes II*, *Schedules* I and J, Docket No. 3 at 18-19.

14

establishes that the Hymes have filed multiple bankruptcy cases as part of a scheme to hinder and delay the United States' collection of taxes, interest and penalties owed under the *Judgment in a Civil Case* entered in *United States of America v. Hymes, et al.,* Case No. 3:05-cv-00123 (D. Alaska).

## CONCLUSION

The United States is entitled to relief under 11 U.S.C. § 362(d)(2), based upon a lack of equity in the Property. The Property is not necessary for reorganization by virtue of the debtors' chapter 7 proceeding. The United States is also entitled to relief under § 362(d)(4) because I find that the debtors filed the instant bankruptcy as part of a scheme to hinder and delay the United States from collecting on its *Judgment*, and that this scheme involved multiple bankruptcy filings, namely the 2008 chapter 13 and the instant case, both of which affected the Property. The court will enter a separate order under § 364(d)(4) which, if properly recorded in compliance with applicable state laws governing notices of interests or liens in real property, shall preclude the operation of the automatic stay against the Property for a period of two years from entry of such order.

DATED: February 20, 2013.

BY THE COURT

/s/ Gary Spraker
GARY SPRAKER
United States Bankruptcy Judge

Serve:  R. Hymes, Pro Se Debtor
D. Hymes, Pro Se Debtor
A. Smart, Esq. (for the United States)
L. Compton, Trustee
U. S. Trustee

15